THE LAW OFFICE OF DAMIAN MOOS, P.C.
DAMIAN M. MOOS (SBN 240030)
damian@damianmooslaw.com
120 Vantis, Suite 535
Aliso Viejo, CA  92656
Telephone:  (714) 465-0665
Facsimile:  (714) 333-1891

Attorney for Defendant
GILBERT LOPEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| GEORGE MORELAND, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AD OPTIMIZERS, LLC, a Nevada limited liability company, JASON KERRIGAN, an individual, GILBERT LOPEZ, an individual, and DOES 4-1000,<br><br>Defendants. | Case No. C 13-00216 PSG<br><br>**DEFENDANT GILBERT LOPEZ'S NOTICE OF MOTION TO DISMISS AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  June 18, 2013<br>Hearing Time: 10:00 a.m.<br>Courtroom: San Jose Courthouse<br>          Courtroom 5 - 4th Floor<br>          280 South 1st Street<br>          San Jose, CA 95113<br>Judge: Hon. Paul S. Grewal |

**TABLE OF CONTENTS**

1.   INTRODUCTION ................................................................................................ 1

2.   STATEMENT OF FACTS ................................................................................... 2

3.   LEGAL ARGUMENT .......................................................................................... 4

     a.   Plaintiff Fails To Plead A CEL Claim With The Requisite Particularity ............. 4

     b.   Plaintiff's CEL Claim Fails Because It Only Applies to Parties Who
          Advertise In An Email Message ........................................................................ 6

          i.    The CEL's Language And California Laws Of Statutory
                Interpretation ............................................................................................. 6

          ii.   Applicable Case Law Interpreting The Phrase "Advertise In" ................. 8

          iii.  Neither Ad Optimizers Nor Lopez Advertised In the Email
                Messages At Issue ................................................................................... 11

     c.   Plaintiff Fails To State A Claim Against Lopez For Violating The CEL
          Because His Alter Ego Allegations Are Deficient ............................................. 13

     d.   The Agent's Immunity Rule Bars Plaintiff's Conspiracy Claim Against
          Lopez Since An Agent Cannot Conspire With His Principal ............................. 14

4.   CONCLUSION .................................................................................................. 16

i

1

## TABLE OF AUTHORITIES

2

Federal Cases

Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citation omitted).............................................. 4, 11, 12, 13

Asis Internet Servs. v. Consumerbargaingiveaways, LLC, 622 F. Supp. 2d 935
    (N.D. Cal. Apr. 17, 2009)....................................................................................... 5, 6

Asis Internet Servs. v. Optin Global, Inc., 2006 U.S. Dist. LEXIS 46309 (N.D.
    Cal. Jun. 30, 2006) ................................................................................................. 8, 9

Asis Internet Servs. v. Subscriberbase Inc., 2009 U.S. Dist. LEXIS 112852 (N.D.
    Cal. Dec. 4, 2009) ................................................................................................. 5, 6

Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994)................................................................ 12

Business Integration Tech. v. Mulesoft Inc., 2011 U.S. Dist. LEXIS 136080 (N.D.
    Cal. Nov. 28, 2011)............................................................................................. 14, 15

Edwards v. Marin Park, Inc., 356 F.3d 1058 (9th Cir. 2004) ....................................... 5

Hypertouch, Inc. v. Azoogle.com, Inc., 2009 U.S. Dist. LEXIS 25999 (N.D. Cal.
    Mar. 19, 2009)...................................................................................................... 5, 9, 10

Kaiser v. BMW of N. Am., 2013 U.S. Dist. LEXIS 2279 (N.D. Cal. Jan. 7, 2013)................... 12

Kassa v. BP West Coast Prods., LLC, 2008 U.S. Dist. LEXIS 61688 (N.D. Cal.
    Aug. 12, 2008) ...................................................................................................... 14

Katzir's Floor & Home Design, Inc. v. M-MLS.COM, 394 F.3d 1143 (9th Cir.
    2004) .................................................................................................................... 13

Mendiono v. Centinela Hosp. Med. Ctr., 521 F.3d 1097 (9th Cir. 2008)...................................... 4

Varela v. Wells Fargo Home Mortg., 2012 U.S. Dist. LEXIS 181323 (N.D. Cal.
    Dec. 21, 2012)...................................................................................................... 12

Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097 (9th Cir. 2003) ................................... 5

State Cases

Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (1994).................................. 14

Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825 (1962).......................... 13

Auer v. Frank, 227 Cal. App. 2d 396 (1964) ................................................................... 13

Automotriz del Golfo de Cal. S. A. de C. V. v. Resnick, 47 Cal. 2d 792 (1957) ................. 13, 14

Balsam v. Trancos, Inc., 203 Cal. App. 4th 1083, 1093-1103 (2012) ..................................... 10

Cooley v. Superior Court, 29 Cal. 4th 228 (2002).......................................................... 7

ii

Everest Investors 8 v. Whitehall Real Estate P'ship XI, 100 Cal. App. 4th 1102
(2002) ............................................................................................................... 14

Hypertouch, Inc. v. ValueClick, Inc., 192 Cal. App. 4th 805 (2011) ............................ 9

In re: Young, 32 Cal. 4th 900 (2004) .......................................................................... 7

Kleffman v. Vonage Holdings Corp., 49 Cal. 4th 334 (2010) ....................................... 7

People v. Braxton, 34 Cal. 4th 798 (2004) ................................................................ 10

People v. Licas, 41 Cal. 4th 362 (2007) ...................................................................... 7

Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269 (1994) ........................... 13

Federal Statutes

15 U.S.C. § 7702 ......................................................................................................... 7

State Statutes

Cal. Bus. & Prof. Code § 17529.1 ......................................................................... 7, 11

Cal. Bus. & Prof. Code § 17529.2 ........................................................................... 7, 8

Cal. Bus. & Prof. Code § 17529.4 ........................................................................... 7, 8

Cal. Bus. & Prof. Code § 17529.5 ........................................................................... 6, 7

Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 4

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 4

iii

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 18, 2013, at 10:00 a.m., before the Honorable Paul S. Grewal of the United States District Court for the Northern District of California, San Jose Division, Defendant Gilbert Lopez ("Lopez") will move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff George Moreland's Second Amended Complaint ("SAC").

Specifically, Lopez seeks dismissal of the SAC pursuant to Rule 12(b)(6) on the ground that the SAC fails to state a claim upon which relief may be granted. Lopez's Motion is based on the following Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the pleadings and records on file in this action, such additional authority and argument as may be presented in any Reply and at the hearing on this Motion, and such other matters of which this Court may take judicial notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

Plaintiff George Moreland's Second Amended Complaint ("SAC") fails to state a claim against Defendant Gilbert Lopez for three reasons: (1) he fails to plead with particularity as required by Federal Rule of Civil Procedure 9(b); (2) he fails to allege sufficient facts showing that he is entitled to relief; and (3) his claims are barred as a matter of law.

Plaintiff's first cause of action against Lopez—violations of California's Commercial Email Law (the "CEL")—is deficient for three reasons. First, courts in this district hold that CEL claims are "grounded in fraud" and, therefore, must be pled with particularity pursuant to FRCP 9(b). Here, Plaintiff fails to plead numerous facts that are necessary to satisfy the particularity requirement and failed to include samples of any of the allegedly unlawful emails at issue. Second, Plaintiff alleges that Ad Optimizers and Lopez only "sent" or "initiated" the emails at issue; the email messages at issue actually advertise third parties. By its express terms, the CEL only imposes liability on parties who "advertise in" an allegedly unlawful email, an interpretation that courts have confirmed. Third, because he seeks to impose liability on Lopez on an alter ego theory of liability, his failure to state an alter ego claim is fatal to this cause of

1

1    action.  Specifically, Plaintiff fails to plead facts showing that an inequitable result will occur

2    absent application of the alter ego doctrine.

3        Plaintiff's second cause of action—civil conspiracy—is barred as a matter of law.  Under

4    the Agent's Immunity rule, an agent cannot conspire with his or her principal as a matter of law

5    unless he or she acts for his or her own personal benefit outside of any gain he or she would

6    receive from the principal.  Accordingly, at the pleading stage, a plaintiff must allege facts

7    showing that the agent was acting for his or her personal benefit.  Here, Plaintiff alleges that

8    Lopez was a manager of Ad Optimizers, that he executed contracts on its behalf, registered

9    domains for it and sent commercial emails for it.  Plaintiff fails to allege any facts, however,

10   showing that Lopez acted for his personal benefit.  Consequently, Plaintiff's conspiracy claim is

11   barred as a matter of law by the Agent's Immunity rule.

12       For the foregoing reasons, Lopez respectfully requests that this Court grant his motion to

13   dismiss Plaintiff's Second Amended Complaint.

14   **2.  STATEMENT OF FACTS**

15       Plaintiff's asserts causes of action for violations of California Business and Professions

16   Code § 17529.5 (the "CEL") and civil conspiracy based on his receipt of at least 1,300

17   commercial email messages.  (Second Amen. Compl. ("SAC") ¶¶ 1-2, 75-88.)  He names,

18   among others, Ad Optimizers, LLC and Gilbert Lopez as defendants. (SAC ¶¶ 11-12, 15-16.)

19       Plaintiff alleges that the Defendants violated the CEL through the use of seven different

20   "prohibited tactics."  (SAC ¶¶ 29, 54, 58-73, 77.)  The seven prohibited tactics are: misleading

21   and deceptive subject lines; misleading sender names and/or email addresses; misleading

22   recipient names and/or email addresses; private registration; use of botnets; forged IP addresses;

23   and forged date/time stamps.  (Id.)  However, he provides only a brief description of how

24   Defendants utilized each of the seven "prohibited tactics."  (SAC ¶¶ 59, 61, 62, 64, 68-69, 70,

25   73.)  He does not include example emails that reflect each of the seven types of allegedly

26   prohibited tactics, does not allege the number of emails out of the 1,300 that fit into each of the

27   seven categories, and does not provide the date ranges of the emails that fit into each category.

28   (SAC ¶¶ 1-88.)  He fails to include any allegations that identify: (i) the subject lines of any of the

2

emails, (ii) whose products were featured in the emails, (iii) the originating/sending domain used in any of the emails, or (iv) the landing sites to which recipients are directed when they click on an email advertisement.  (Id.)

Plaintiff further alleges that the Defendants sent the email messages at issue for third party advertisers.  (SAC ¶¶ 30, 40, 45.)  In the section entitled "SPECIFIC ALLEGATIONS," he claims "Defendants have been responsible for *sending* millions of unsolicited commercial emails, *advertising other entities*."  (SAC ¶ 40 emphasis added).)  He also alleges that "Defendants are responsible for the *sending* of all of the spams at issue," and "*initiat[ed]* (as defined by Cal. Bus. & Prof. Code § 17529.1(i)) the *sending* of *at least* One Thousand Three Hundred (1,300) unsolicited commercial emails."  (SAC ¶¶ 30, 44 (emphasis added).)  Thus, he alleges that Defendants transmitted the email messages at issue.

In his initial Verified Complaint, Plaintiff identified numerous third party "Advertiser Defendants" whose products and services were actually advertised in hundreds of the emails at issue in this action.  (Req. Jud. Not. ("RJN") Ex. 1 at ¶¶ 49-58, 89-96, 112 (Ver. Compl.).)  Further, the lone example of one of the allegedly unlawful email messages actually advertises free credit score services; it makes no mention of Ad Optimizers or Lopez.  (RJN Ex. 2.)  Plaintiff does not allege that Ad Optimizers or Lopez operate a business that provides free credit scores to consumers; he never alleges what business, if any, they operate.  (SAC ¶¶ 1-88.)  While Plaintiff concludes that Defendants "sent, or caused to be sent, or advertised in" the email messages at issue, he fails to include any factual allegations that show that Ad Optimizers or Lopez actually "advertised in" any of the emails at issue.  (SAC ¶¶ 1, 26, 77.)

Plaintiff seeks to hold Lopez personally liable for Ad Optimizers alleged violations of the CEL based on an alter ego theory.  (SAC  ¶¶ 15-18.)  He alleges that Lopez is an "owner and manager" of Ad Optimizers, that there is a "unity of interest" between the two such that to consider them separately "would result in an injustice," and that Lopez has "exercised exclusive control" over the company such that "failure to disregard their separate identities would result in fraud or injustice."  (SAC ¶¶ 16-17.)  He also alleges, on information and belief, that Lopez "undercapitalized [Ad Optimizers]…relative to the potential liability from sending thousands, if

3

1    not millions, of unsolicited commercial spam emails." (SAC ¶¶ 18.)

2         Plaintiff also seeks to hold Lopez individually liable for the purported CEL violations

3    based on a civil conspiracy theory. (SAC ¶¶ 82-86.) In connection with his conspiracy claim, he

4    alleges that Lopez conspired with Ad Optimizers to violate the CEL. (SAC ¶ 82.) Specifically,

5    he alleges that Lopez "executed contracts with third parties," (SAC ¶ 83), "personally registered

6    numerous domains…[and] sent some or all of the…emails at issue," (SAC ¶ 19).

7    **3.  LEGAL ARGUMENT**

8         Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for failure

9    to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a

10   motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

11   claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

12   (citation omitted). Dismissal is appropriate where "the complaint lacks a cognizable legal theory

13   or sufficient facts to support a cognizable legal theory." Mendiono v. Centinela Hosp. Med. Ctr.,

14   521 F.3d 1097, 1104 (9th Cir. 2008).

15        "[O]nly a complaint that states a ***plausible*** claim for relief survives a motion to dismiss."

16   Ashcroft, 556 U.S. at 679 (emphasis added). "[W]here the well-pleaded facts do not permit the

17   court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

18   not 'show[n]'—'that the pleader is entitled to relief.'"  Id. (quoting Federal Rule of Civil

19   Procedure 8(a)(2)'s requirement that a complaint must contain a "short and plain statement of the

20   claim ***showing*** that the pleader is entitled to relief").

21        Plaintiff's FAC must be dismissed for failure to state a claim against Lopez. He fails to

22   plead a CEL with particularity, as he is required to do, and fails to plead sufficient facts to

23   support his CEL claim. His second cause of action is barred as a matter of law by the Agent's

24   Immunity rule.

25        **a.  Plaintiff Fails To Plead A CEL Claim With The Requisite Particularity**

26        "Where plaintiffs allege fraud, or conduct that is sufficiently 'grounded in fraud,' they

27   must plead their claim with particularity as required by Rule 9(b) of the Federal Rules of Civil

28   Procedure."  See Asis Internet Servs. v. Subscriberbase Inc., 2009 U.S. Dist. LEXIS 112852 at

4

1    *7 (N.D. Cal. Dec. 4, 2009) (citing Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th

2    Cir. 2004); Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003)).

3        Plaintiffs asserting claims for violation of the CEL must plead their claims with

4    particularity.  See, e.g., Subscriberbase, 2009 U.S. Dist. LEXIS 112852 at *9-*13; Asis Internet

5    Servs. v. Consumerbargaingiveaways, LLC, 622 F. Supp. 2d 935, 945 (N.D. Cal. Apr. 17, 2009);

6    Hypertouch, Inc. v. Azoogle.com, Inc., 2009 U.S. Dist. LEXIS 25999 at *3-*4 (N.D. Cal. Mar.

7    19, 2009).  "Plaintiff must…provide more than general allegations regarding the false

8    advertisements and examples."  Consumerbargaingiveaways, 622 F. Supp. 2d at 945.  "[I]t is the

9    specific description of…'the who, what, when, where, and how,' that will be most important in

10    allowing a defendant to prepare its answer."  Subscriberbase, 2009 U.S. Dist. LEXIS 112852 at

11    *10-*11.  "To satisfy the particularity requirement, the complaint must provide, at a minimum,

12    the specifics regarding (including an example of) each type of allegedly false or misleading

13    advertisement, the number of those advertisements and the date ranges of the emails in each

14    category."  Consumerbargaingiveaways, 622 F. Supp. 2d at 945.

15        In Subscriberbase, the court granted a motion to dismiss because the plaintiffs failed to

16    allege a CEL claim with particularity.  See 2009 U.S. Dist. LEXIS 112852 at *11-*13.  It first

17    concluded that they had alleged sufficient ties between the defendants and the emails at issue by

18    identifying "the various domain names for the landing sites that the emails provide links to, and

19    state that the registrant for these landing sites is [defendant or one of its related entities]." Id.

20    However, it concluded that these allegations were still deficient.  See id. at *12-*13.  In holding

21    that they failed to plead a CEL claim with particularity, the court wrote:

22        "Plaintiffs can, at the very least, submit an appendix that contains each subject

23        line, the total number of emails that bore it, and specific information about each

24        email that bore it, including the sender, the date it was sent, and the landing site to

25        which the email directs the recipient.  As it is still useful to have a small number

26        of sample emails, Plaintiffs should include with the amended complaint the

27        sample emails that they included with their original Complaint."

28    Id. at *13.

Plaintiff's CEL claim is grounded in fraud and, therefore, must be pled with particularity. He alleges that Defendants knowingly, willfully and blatantly sent email messages with "falsified, misrepresented or forged header information." (SAC ¶¶ 3,5.) He alleges that they concealed their identities, through the use of botnets and forged IPs in order to deceive recipients, and that these actions constituted "*material* falsity and deception." (SAC ¶¶ 57, 60-61, 65, 68-69, 70-71.) Thus, his claims are grounded in fraud and must be pled with particularity pursuant to FRCP 9(b). See, e.g., Azoogle.com, 2009 U.S. Dist. LEXIS at *3-*4.

Plaintiff failed to plead a CEL claim with particularity as required by FRCP 9(b). He has failed to provide the "specifics regarding (including an example of) each type of allegedly false or misleading advertisement, the number of those advertisements [or] the date ranges of the emails in each category." Consumerbargaingiveaways, 622 F. Supp. 2d at 945. He failed to provide a single example email, does not identify how many of the 1,300 emails fall into each of his seven categories of "prohibited tactics," and fails to identify the date ranges of the emails in each category. (SAC ¶¶ 1-88.) Similarly, pursuant to Subscriberbase, Plaintiff has failed to allege the domain names for the landing sites to which any of the emails at issue redirect, who those sites were registered to, any of the allegedly unlawful subject lines, the sender of any of the emails, or the dates on which each email was sent. Given the lack of information supplied by Plaintiff, coupled with the complete absence of any example emails, Lopez cannot answer the allegations in the Second Amended Complaint (particularly since Ad Optimizers was not sending email messages between February 15, 2011 and the date Plaintiff filed his initial Complaint).

Thus, Plaintiff failed to plead a CEL claim with the required particularity. This Court must therefore dismiss his first cause of action for violation of the CEL.

**b. Plaintiff's CEL Claim Fails Because It Only Applies to Parties Who Advertise In An Email Message**

i. The CEL's Language And California Laws Of Statutory Interpretation

Section 17529.5 of the CEL applies to parties who "advertise in" a commercial email. See Cal. Bus. & Prof. Code § 17529.5(a). It provides: "[i]t is unlawful for any person or entity to *advertise in* a commercial e-mail advertisement" that violates any one of sub-paragraphs (a)(1)

6

1    to (a)(3).  Id.  Thus, by its express terms, it only applies to a party who advertises in a

2    commercial email.

3         In contrast, other sections of the CEL apply more broadly to parties who "***initiate* or**

4    advertise in" an email.  Compare § 17529.5(a) (applying only to parties who "advertise in" an

5    email advertisement) with § 17529.2 (applying to parties who either "initiate or advertise in" an

6    email advertisement) and § 17529.4 (same).[1]  "[W]hen different words are used in

7    contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that

8    a difference in meaning was intended."  Kleffman v. Vonage Holdings Corp., 49 Cal. 4th 334,

9    343 (2010) (interpreting California Business and Professions Code § 17529.5).  By excluding

10   "initiate" from § 17529.5, the legislature intended for § 17529.5 to only apply to parties who

11   actually advertise their goods or services in an email, not to "initiators" involved in the

12   transmission process.  See, e.g., In re: Young, 32 Cal. 4th 900, 907 (2004) ("Where a statute

13   referring to one subject contains a critical word or phrase, omission of that word or phrase from a

14   similar statute on the same subject generally shows a different legislative intent." (citation

15   omitted)); People v. Licas, 41 Cal. 4th 362, 367 (2007).

16        Moreover, courts should give meaning to every word of a statute if possible, and should

17   avoid a construction making any word surplusage.  See e.g., Cooley v. Superior Court, 29 Cal.

18   4th 228, 249 (2002).  The California legislature provided separate definitions in the CEL for the

19   terms "Advertiser" and "Initiate."  See Cal. Bus. & Prof. Code § 17529.1(a), (i).  It felt the

20   distinction between advertisers and initiators was great enough that it expressly allocated liability

21   on **both** an advertiser and an initiator when it desired such an outcome, see Cal. Bus. & Prof.

---

[1] The Federal CAN-SPAM Act contains a similar dichotomy between parties who advertise in an
email message and parties who initiate their transmission.  See 15 U.S.C. § 7702(9), (16).  Under
federal law, "[t]he term 'initiate', when used with respect to a commercial electronic mail
message, means to originate or transmit such message or to procure the origination or
transmission of such message."  § 7702(9).  The term "sender" is defined as "a person who
initiates such a message **and** whose product, service, or Internet web site is advertised or
promoted by the message."  § 7702(16)(a) (emphasis added).  Thus, federal law also
distinguishes between those advertise in an email message ("senders") and those who transmit
them ("initiators").

7

Code §§ 17529.2, 17529.4 (imposing liability on parties who "initiate or advertise in" an unlawful email).  If the phrase "advertise in" in section 17529.5 includes those who "initiate" the transmission of an email message, then the use of the word "initiate" in sections 17529.2 and 17529.4 of the CEL, would be rendered meaningless and surplusage.

ii.  <u>Applicable Case Law Interpreting The Phrase "Advertise In"</u>

In its Order dated April 8, 2013, this Court indicated that Lopez's interpretation of the CEL—that it only applies to advertisers and not to initiators or senders—was inconsistent with California courts' interpretation of the law.  (Dckt. # 25 at 7:20-7:22.)  In reaching that conclusion, however, the Court relied upon: (i) dicta in one case (which the Court acknowledged was dicta) while ignoring the holding that the statute applies to advertisers; (ii) a case that contained no substantive analysis and that is compatible with Lopez's interpretation; and (iii) a case that did not address the advertiser versus initiator issue at all because it was not raised as an issue in the appeal.  More fundamentally, the Court overlooked a case that directly addresses the issue and supports Lopez's interpretation.

In <u>Asis Internet Servs. v. Optin Global, Inc.</u>, the court granted a defendant's motion to dismiss a CEL claim "because [the] Plaintiff nowhere alleges that the [defendant] 'advertised' in the alleged commercial email message."  2006 U.S. Dist. LEXIS 46309 at *22 (N.D. Cal. Jun. 30, 2006).  In <u>Optin</u>, the defendant argued that its motion to dismiss should be granted because the CEL "requires that a defendant 'actually send the alleged spam or cause it to be sent.'"  <u>Id.</u> at *21.  The court rejected the argument, writing that the defendant's "argument is contradicted by language of the statute, which appears to extend liability to anyone who 'advertises' in a commercial email [message], regardless of whether the advertiser was also the one who actually sent the spam or caused it to be sent."  <u>Id.</u>  The Court then wrote:

> "…the Court concludes that the Complaint does not state a claim under §
> 17529.5…because Plaintiff nowhere alleges that the [defendant] 'advertised' in
> the alleged commercial e-mail messages.  Therefore, the Court dismisses
> Plaintiff's [CEL] claim.  Plaintiff may include a § 17529.5 claim in an amended

8

1    complaint if it can state, truthfully and without contradicting the original

2    complaint, that Defendants advertised their services in the allegedly fraudulent

3    emails."

4  Id. at *22.

5        Hypertouch, Inc. v. ValueClick, Inc. also supports the conclusion that the CEL only

6  applies to those who advertise in an allegedly unlawful email message, and not to mere

7  initiators.[2]  In ValueClick, the plaintiff asserted a CEL claim against ValueClick, a company that

8  contracted with third party affiliates to send "commercial e-mail advertisements that include a

9  link redirecting the consumer to a promotion on ValueClick's Web sites."  192 Cal. App. 4th

10  805, 813-14 (2011).  On appeal, ValueClick argued that its motion for summary judgment should

11  have been granted because the plaintiff "failed to identify any evidence establishing that

12  [ValueClick] 'sent the emails at issue,' or 'knew' that an affiliate was sending" them.  Id. at 834.

13  In rejecting ValueClick's argument, the court held:

14        "…the [CEL] imposes liability on any 'person or entity' that 'advertise[s]' in an

15        e-mail containing any of the forms of deceptive content described in section

16        17529.5, subdivision (a)(1) to (3)…

17        Therefore, for purposes of section 17529.5, the **relevant question** is not whether

18        [plaintiff] can demonstrate that [ValueClick] sent or had knowledge of the e-

19        mails, but rather **whether [it] advertised in those e-mails**."

20  Id. at 835 (emphasis added).  Thus, the holding in ValueClick is that a party is liable for violating

21  the CEL if it advertises in an unlawful email message.  See id.

22        Hypertouch, Inc. v. Azoogle.com, Inc. does not address the issue of whether an initiator

23  _____

24  [2] The Court cited Hypertouch, Inc. v. ValueClick, Inc. as one of three cases in support of its
     conclusion that "California courts…have applied Section 17529.5 both to companies that
25   advertise in spam messages and to those that create and send third-party spam advertisements."
     (Dckt. # 25 at 7:21-7:22.)  However, the Court went on to note that the language in ValueClick
26   suggesting that the CEL applies to initiators was only dicta.  (Dckt.#25 at 8 n.43 ("Although
     *ValueClick* implies that Section 17529.5 applies even to those who merely send third-party
27   advertisements, that implication is dicta.").)

28

1   can be held liable on a CEL claim.  See 2009 U.S. Dist. LEXIS 25999 at *9 (N.D. Cal. Mar. 19,

2   2009).  In Azoogle, Azoogle.com argued that Hypertouch's CEL claim should be dismissed

3   because it did not allege that the email messages at issue "advertise[d] Azoogle's own products

4   or services."  Id.  In a single paragraph without any real analysis, the court observed that the CEL

5   "includes no requirement that the 'person or entity' must have been advertising its own products

6   or services."  Id.  However, the court's observation did not come in a vacuum; it had already held

7   that Hypertouch's complaint was deficient because it failed to plead a CEL claim with

8   particularity.  See id. at *3-*4.  Indeed, it had dismissed the complaint for failure to comply with

9   FRCP 9(b), in part, because Hypertouch failed to identify which defendants specifically engaged

10  in the allegedly unlawful email advertising.  See id.  In any event, the court never held that the

11  phrase "advertise in" includes a mere initiator.

12        The court in Balsam v. Trancos, Inc. never addressed the issue of whether an initiator can

13  be held liable for violating § 17529.5 of the CEL.  See 203 Cal. App. 4th 1083, 1093-1103

14  (2012).  Rather, it addressed whether an email messages' header information had been falsified

15  where the identity of the sender could not be readily ascertained.  See id.  Although it appears

16  that the defendant may have only sent the emails at issue, any contention that it was only an

17  initiator and did not advertise in any of the emails at issue, *was not an argument it raised on*

18  *appeal*.  See id. at 1093 ("Trancos contends the judgment must be reversed because (1) the

19  California Supreme Court held in *Kleffman* that the sending of commercial e-mails from multiple

20  and nonsensically named domain names does not violate section 17529.5(a)(2), part of the Anti-

21  spam Law…").  Hence, the Balsam court neither considered nor decided whether § 17529.5

22  liability only applies to parties who "advertise in" an unlawful email message, or whether it also

23  includes initiators.  See id. at 1093-1103.  Because "an appellate court's opinion is not authority

24  for propositions the court did not consider or on questions it never decided," People v. Braxton,

25  34 Cal. 4th 798, 819 (2004), the Balsam decision is not authority on the issue of whether an

26  initiator can be liable for violating he CEL.

27        In sum, both Optin and ValueClick hold that the relevant inquiry in a CEL claim is

28  whether the defendant "advertised in" the email message at issue.  The Azoogle decision does

10

not address the issue and, to the extent that it does, it is compatible with Optin and ValueClick. Finally, the Balsam decision is not authority on the issue of whether an initiator can be held liable for violating the CEL because the appellant did not raise the issue on appeal and the court did not address it.

           iii.   Neither Ad Optimizers Nor Lopez Advertised In the Email Messages At Issue

       Plaintiff fails to state a CEL claim against Ad Optimizers or Lopez because he only alleges that they initiated the email messages at issue, not that they "advertised in" the messages. Specifically, he alleges that they "have been responsible for *sending*…commercial emails, advertising other entities." (SAC ¶ 40 (emphasis added).) He pleads similar allegations throughout the SAC: "Defendants are responsible for the *sending* of all of the spams at issue," and they "*initiat[ed]* (as defined by Cal. Bus. & Prof. Code § 17529.1(i))[3] the *sending* of *at least* One Thousand Three Hundred (1,300) unsolicited commercial emails." (SAC ¶¶ 30, 44 (emphasis added).) He fails to plead facts with particularity, as required by FRCP 9(b), showing how Ad Optimizers or Lopez "advertised in" any of the emails at issue. Since CEL liability only applies to parties who "advertise in" an email message, neither Ad Optimizers nor Lopez can be held liable as a matter of law for merely "initiating" or "sending" the emails at issue. Thus, Plaintiff's CEL claim fails to state a claim against Ad Optimizers or Lopez.

       Further, Plaintiff fails to allege facts that *show* that he is entitled to relief on his CEL claim as required under Ashcroft. Pursuant to Ashcroft, threadbare recitals of the elements of a cause of action, supported by legal conclusions, are insufficient; conclusions can provide a framework but must be supported by factual allegations. See Ashcroft, 556 U.S. at 678-79. Accordingly, while Plaintiff makes three passing references suggesting that Defendants "advertised in" some of the emails at issue, (SAC ¶¶ 1, 26, 77), his allegations are nothing more

---

[3] California Business & Professions Code § 17529.1(i) defines "initiate" as "transmit or cause to be transmitted a commercial e-mail advertisement or assist in the transmission of a commercial e-mail advertisement by providing electronic mail addresses where the advertisement may be sent."

than threadbare legal conclusions that recite the "advertise in" element of a CEL claim.  He fails to plead any facts, as required under Ashcroft, that *plausibly show* that Ad Optimizers or Lopez "advertised in" any of the emails at issue and, therefore, that he is entitled to relief. And he certainly fails to plead any facts showing that Ad Optimizers or Lopez "advertised in" the emails at issue with particularity as required by FRCP 9(b).

That the only parties who "advertise in" the emails at issue are third parties, and not Ad Optimizers or Lopez, is confirmed by documents that this Court may consider.  In his initial Verified Complaint, Plaintiff identified numerous "Advertiser Defendants" whom he admits were the actual advertisers in hundreds of the email messages at issue in this action.  (RJN Ex. 1 at ¶¶ 49-58, 89-96, 112.)  His Verified Complaint also confirms that he is capable of pleading facts, as opposed to conclusions, *showing* that a party "advertised in" a commercial email message.  (RJN Ex. 1 at ¶¶ 89-90, 92-93.)  Moreover, in an example of one of the email messages at issue,[4] the email "advertises" free credit score services; it makes no mention of Ad Optimizers or Lopez, and Plaintiff does not allege that either Defendant operates a credit score business.  (RJN Ex. 2; SAC ¶¶ 11-20.)  Because these judicially noticeable documents demonstrate that neither Ad Optimizers nor Lopez "advertised in" any of the email messages at issue, any conclusion or allegation to the contrary must not be considered true for purposes of Lopez's motion to dismiss.  See, e.g., Varela v. Wells Fargo Home Mortg., 2012 U.S. Dist. LEXIS 181323 at *7 (N.D. Cal. Dec. 21, 2012) ("The court need not accept as true allegations that contradict facts which may be judicially noticed"); Kaiser v. BMW of N. Am., 2013 U.S. Dist. LEXIS 2279 at *12 (N.D. Cal. Jan. 7, 2013) (same).

---

[4] As detailed in the concurrently filed Request for Judicial Notice, this Court may properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).  The email message at issue is one whose contents are alleged and relied upon throughout the FAC, was provided to Lopez's counsel by Plaintiff's counsel as an example of one of the allegedly unlawful email messages, and Lopez does not question that Plaintiff received it.  (Decl. Damian M. Moos Supp. Def.'s Mot. Dismiss ¶ 2.)  Thus, pursuant to Branch, this Court may consider the contents of the email message at issue.

12

1    Thus, Plaintiff fails to state a CEL claim against Ad Optimizers or Lopez because he fails

2    to allege that either party "advertised in" any of the emails at issue, and certainly not with the

3    particularly required by FRCP 9(b).

4         **c.   Plaintiff Fails To State A Claim Against Lopez For Violating The CEL Because**

5              **His Alter Ego Allegations Are Deficient**

6    "[T]he tenet that a court must accept as true all of the allegations contained in a complaint

7    is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678.  "Threadbare recitals of the

8    elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

9    "While legal conclusions can provide the framework of a complaint, they must be supported by

10   factual allegations." Id. at 679.

11    "Alter ego is a limited doctrine, invoked only where recognition of the corporate form

12   would work an injustice to a third person." Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th

13   1269, 1285 (1994); Katzir's Floor & Home Design, Inc. v. M-MLS.COM, 394 F.3d 1143, 1149

14   (9th Cir. 2004).  The two requirements are (1) that there be such unity of interest and ownership

15   that the separate personalities of the corporation and the individual no longer exist, and (2) that,

16   if the acts are treated as those of the corporation alone, an inequitable result will follow.

17   Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 837 (1962).

18    With respect to the second element of the alter ego doctrine—that an inequitable result

19   will follow—"it is not sufficient to merely show that a creditor will remain unsatisfied if the

20   corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an

21   'inequitable result.'" Id. at 842.  "In almost every instance where a plaintiff has attempted to

22   invoke the doctrine he is an unsatisfied creditor." Id.  "If the capital is ***illusory or trifling***

23   compared with the business to be done and the risks of loss, this is a ground for denying the

24   separate entity privilege." Automotriz del Golfo de Cal. S. A. de C. V. v. Resnick, 47 Cal. 2d

25   792, 797 (1957) (citation and internal quotations omitted); Auer v. Frank, 227 Cal. App. 2d 396,

26   409 (1964).

27    Plaintiff fails to plead facts showing that an inequitable result will follow if the alleged

28   acts of Ad Optimizers are treated as its own.  He alleges, in conclusory fashion, that "failure to

13

1    disregard their separate identities would result in fraud or injustice." (SAC ¶ 17.) His only other

2    allegation that suggests an inequitable result will follow is that Lopez "undercapitalized [Ad

3    Optimizers]…relative to the potential liability from sending ***thousands, if not millions***, of

4    unsolicited commercial spam emails." (SAC ¶¶ 18 (emphasis added).) In other words, Plaintiff

5    alleges that Lopez should be held personally liable for Ad Optimizer's actions because the

6    company did not have $1 million to $1 billion dollars in surplus capital—i.e. the amount

7    necessary to cover one thousand to one million emails at $1,000 per email as provided in

8    Business & Professions Code § 17529.5. As noted in <u>Automotriz</u>, however, the relevant inquiry

9    into whether a company is undercapitalized such that an inequitable result will follow is whether

10   the capital is "illusory or trifling." Plaintiff makes no allegations that Lopez capitalized Ad

11   Optimizers in a manner that was illusory or trifling. Thus, he fails to allege facts showing that an

12   inequitable result will occur, which is fatal to his alter ego claim against Lopez.

13       **d.   The Agent's Immunity Rule Bars Plaintiff's Conspiracy Claim Against Lopez**

14           **Since An Agent Cannot Conspire With His Principal**

15           Under the Agent's Immunity rule, "[a]gents and employees of a corporation cannot

16   conspire with their corporate principal or employer where they act in their official capacities on

17   behalf of the corporation and not as individuals for their individual advantage." <u>Applied Equip.</u>

18   <u>Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 512 n.4 (1994) (citation and internal quotations

19   omitted); <u>see</u> <u>Reynolds v. Bement</u>, 36 Cal. 4th 1075, 1090 (2005). The rule has been applied to

20   agents and employees of limited liability companies and limited partnerships. <u>See</u> <u>Everest</u>

21   <u>Investors 8 v. Whitehall Real Estate P'ship XI</u>, 100 Cal. App. 4th 1102, 1107 (2002) (limited

22   partnership); <u>Kassa v. BP West Coast Prods., LLC</u>, 2008 U.S. Dist. LEXIS 61688 at *23-*24

23   (N.D. Cal. Aug. 12, 2008) (limited liability company).

24           Absent allegations that an agent/employee was acting for his or her own benefit, a civil

25   conspiracy claim against an agent/employee stemming from a purported conspiracy between the

26   agent/employee and his or her principal/employer fails as a matter of law. <u>See</u> <u>Business</u>

27   <u>Integration Tech. v. Mulesoft Inc.</u>, 2011 U.S. Dist. LEXIS 136080 at *18-*21 (N.D. Cal. Nov.

28   28, 2011); <u>Everest</u>, 100 Cal. App. 4th at 1107. In <u>Business Integration Technology v. Mulesoft</u>,

14

1  Inc., the court held that a plaintiff failed to state a civil conspiracy claim against a corporate

2  officer because he failed to allege facts demonstrating that the purported agent-conspirator

3  "would benefit personally outside" of his or her role as an agent. 2011 U.S. Dist. LEXIS 136080

4  at *20. It concluded that alleged monetary gain deriving solely from the officer's role as an

5  agent of the company was insufficient. Id.

6       Plaintiff's civil conspiracy claim is barred by the Agent's Immunity rule as a matter of

7  law. He alleges that Lopez "was at all times relevant…[a] manager" of Ad Optimizers, (SAC ¶

8  15), he "executed contracts with third parties," (SAC ¶ 83), and he "personally registered

9  numerous domains…[and] sent some or all of the…emails at issue," (SAC ¶ 19). He fails to

10 allege facts, as required under Mulesoft, showing that Lopez acted for his own benefit outside of

11 his role as a manager/agent of Ad Optimizers. (SAC ¶¶ 15, 19, 81-88.) Thus, Plaintiff's civil

12 conspiracy claim against Lopez fails as a matter of law; it is barred by the Agent's Immunity

13 rule.[5]

14

15 /////

16

17

18

19

20

21

22 _____

23 [5] In its April 8, 2013 Order, the Court observed: "It is unclear to the court…whether the members/owners of a limited liability corporation enjoy the agent's immunity rule presumption

24 that an employee's actions are within the scope of employment absent pleading of facts to the contrary." (Dckt. #25 at 9 n.52.) It is unnecessary, however, for the Court to address that issue

25 given Plaintiff's allegations. Plaintiff alleges that Lopez was Ad Optimizer's manager, that he executed contracts on its behalf, that he registered domains, and that he sent some or all of the

26 email messages at issue. (SAC ¶¶ 15, 19, 83.) Thus, Plaintiff's own allegations are that Lopez was more than just a mere member/owner; he was a manager who allegedly carried out a number

27 of functions on the company's behalf.

28

15

**4.  CONCLUSION**

In conclusion, Plaintiff's Second Amended Complaint fails to state a claim against Defendant Gilbert Lopez.  Lopez therefore respectfully requests that this Court grant his motion to dismiss the SAC.


DATED:  May 8, 2013                    The Law Office of Damian Moos, P.C.



                                       By:    /s/  Damian M. Moos
                                              Damian M. Moos
                                              Email: damian@damianmooslaw.com

                                              Attorney for Defendant
                                              Gilbert Lopez