1
2
3
4
5
6
7
8
9

**United States District Court**
For the Northern District of California

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GEORGE MORELAND,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AD OPTIMIZERS, LLC., *et al.*<br><br>　　　　　Defendants. | Case No.: 13-00216 PSG<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS**<br><br>**(Re: Docket No. 4)** |

　　　　Defendant Gilberto Lopez ("Lopez") moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)
the claims brought against him by Plaintiff George Moreland ("Moreland").[1] On March 5, 2013,
the parties appeared for a hearing. Having considered the arguments and the parties' papers, the
court GRANTS Lopez's motion to dismiss but provides Moreland with leave to amend his
complaint.

---

[1] *See* Docket No. 4.

1

Case No.: 13-00216 PSG
**ORDER**

## I.      BACKGROUND

The court draws the following facts from Moreland's First Amended Complaint ("FAC")[2] and from documents the court takes judicial notice of below.[3]

Moreland alleges that beginning on February 14, 2011, he received more than 1,300 spam email messages[4] at his private, confidential email address.[5]  He claims that the email headers contained false and misleading information, including sham subject lines, phony sender names, and fake IP addresses.[6]  The false information apparently enabled the messages to bypass Moreland's spam filter and induced him to open them.[7]  According to Moreland, the emails contained advertisements from a number of different advertisers,[8] and when he tried to opt-out of receiving them, even more of the emails were sent.[9]

When Moreland tried to uncover the identity of the sender, he discovered that the emails were sent through either a botnet or privately registered proxy services designed to obscure their source by falsifying IP address information.[10]  Moreland ultimately learned that the emails were being sent by Ad Optimizers, LLC, ("Ad Optimizers") a digital advertising company owned by Lopez and Jason Kerrigan ("Kerrigan").[11]  The emails featured third-party ads and no advertisements of Ad Optimizers' services.[12]  Moreland has no business affiliation with any of the

---

[2]  *See* Docket No. 1, Ex. B.

[3]  *See* Docket Nos. 8, 9.

[4]  *See* Docket No. 1, Ex. B ¶¶ 1, 22.

[5]  *Id.* ¶ 13.

[6]  *See, e.g., id.* ¶¶ 46-69.

[7]  *Id.* ¶ 56.

[8]  *See* Docket No. 9.

[9]  *See* Docket No. 1, Ex. B ¶ 25.

[10]  *Id.* ¶¶ 65-67.

[11]  *Id.* ¶¶ 13, 15.

[12]  *See* Docket No. 9, Exs. A, B.

Case No.: 13-00216 PSG
**ORDER**

United States District Court
For the Northern District of California

advertising companies or with Ad Optimizers and claims never to have consented to receiving the advertisements.[13]  As a result of these emails, Moreland claims that he incurred costs to store the unwanted emails and spent time accessing, reviewing, and discarding them.[14]

On February 15, 2012, Moreland filed suit in Santa Clara County Superior Court against numerous defendants but not Lopez, Kerrigan, or Ad Optimizers.[15]  On June 19, 2012, after all of the named defendants were dismissed, Moreland filed a First Amended Complaint ("FAC") in which he added Ad Optimizers, Kerrigan, Lopez, and Does 1-100, asserting causes of action for violating California's Business and Professions Code Section 17529.5,[16] and for civil conspiracy and declaratory relief.[17]  Lopez was served with the complaint on December 13, 2012, and he removed the case to this court on January 14, 2012.  Lopez then filed the pending motion to dismiss.

## II.   LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[18]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[19]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged

---

[13]  *See* Docket No. 1, Ex. B ¶ 38.

[14]  *Id.* ¶¶ 10, 44.

[15]  *See* Docket No. 1, Ex. B.

[16]  Cal. Bus. & Prof. Code § 17529 is also known as the Commercial Email Law ("CEL").

[17]  *See* Docket No. 1, Ex. B.

[18]  Fed. R. Civ. P. 8(a)(2).

[19]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[20]  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Case No.: 13-00216 PSG
**ORDER**

United States District Court
For the Northern District of California

in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[21]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[22]  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[23]  The court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[24]  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[25]

## III.   DISCUSSION

### A.   Request for Judicial Notice

Lopez requests judicial notice of Moreland's original complaint and an exemplar email, representative of the emails at issue in this case.[26]  Moreland does not object to the request.  The authenticity of the original complaint is not in dispute and may be verified by resort to the public record.[27]  The email is referenced generally in the complaint and its authenticity likewise is not in

---

[21] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[22] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[23] *See id.* at 1061.

[24] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("[A] wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[25] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[26] *See* Docket Nos. 8-14.

[27] *See* Fed. R. Ev. 201(b)(2); *see also United States ex rel. Robinson Rancheria v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (holding that a court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

4

Case No.: 13-00216 PSG
**ORDER**

1  dispute.[28]  Lopez's request for judicial notice is GRANTED.

2  **B.     Motion to Dismiss**

3      **1.     Violation of California's Commercial Email Law**

4      Moreland alleges that Ad Optimizers violated California Business and Professions Code

5  Section 17529.5 by sending him unsolicited commercial emails with falsified header information

6  and that Lopez, as an alter ego of Ad Optimizers, is personally liable for the corporation's actions.

7  Lopez counters that Moreland fails to plead facts that support alter ego liability and fails to plead

8  the elements of a violation of Section 17529.5.

9      **a.     Alter Ego Liability**

10      In the FAC, Moreland alleges that Lopez should be liable as an alter ego for Ad

11  Optimizers' unlawful conduct because Lopez and Ad Optimizers have united interests and it would

12  be inequitable if Lopez is not held liable.  Lopez argues that Moreland fails to plead facts either to

13  support the existence of a unity of interest between Lopez and Ad Optimizers or to support an

14  inequitable result if Ad Optimizers alone is held liable.  Moreland responds that Lopez is not just a

15  corporate officer, he is the entirety of the Ad Optimizers company, and so his interests are

16  necessarily united with Ad Optimizers'.[29]

17      "Alter ego is a limited doctrine, invoked only where recognition of the corporate form

18  would work an injustice to a third person."[30]  The doctrine requires: (1) a unity of interest and

19  ownership such that the separate identities of the corporation and the individual no longer exist;

20  and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow.[31]

21

22  [28]  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (judicial notice extends to documents not expressly referenced in the complaint, but upon which plaintiff's complaint necessarily relies).

23

24  [29]  *See* Docket No. 19.

25  [30]  *Tomaselli v. Transamerica Ins. Co.,* 25 Cal. App. 4th 1269, 1285 (1994) (emphasis omitted); *see also Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances.").

26

27  [31]  *See, e.g., Tomaselli*, 25 Cal. App. 4th at 1285; *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).

28

Case No.: 13-00216 PSG
**ORDER**

United States District Court
For the Northern District of California

1   Sole ownership and control is insufficient to support a finding of alter ego liability.[32]  The

2   separateness of the corporation and the alter ego instead must be so illusory that failure to separate

3   the two would result in an injustice to a third party.[33]  Although there is no single set of facts or

4   circumstances that automatically triggers alter ego liability,[34] in *Tomaselli v. Transamerica Ins.*

5   *Co.*, the court noted that commingling of funds, failure to follow corporate procedures, and

6   undercapitalization with respect to the risks associated with the corporation were factors that weigh

7   in favor of finding alter ego liability appropriate.[35]

8         Moreland alleges in the FAC that "Lopez is an alter ego of Ad Optimizers, LLC, and there

9   is such a unity of interest that to consider the[m] to be separate entities would result in an

10  injustice."[36]  But the only facts Moreland presents are Lopez's position as "an owner and manager"

11  and that he "exercised exclusive control over" Ad Optimizers.[37]  Moreland asserts in his opposition

12  that Ad Optimizers consists solely of Lopez, but his complaint belies that assertion because he also

13  alleges that Kerrigan is an owner and manager at Ad Optimizers.[38]  Even if Lopez were the sole

14  employee and owner of the company, those facts support an allegation of ownership and control

15  but not that an inequitable result will occur if the corporate veil is not pierced.  Moreland makes no

16  allegation that Lopez commingled funds, failed to follow corporate procedures, caused Ad

17  Optimizers to be undercapitalized, or any other facts that demonstrate an inequitable result would

18  occur absent alter ego liability.

19

20

21

22  [32]  *See, e.g., Katzir's Floor & Home Design, v. M-mls.com*, 394 F.3d 1143, 1149 (2004).

23  [33]  *Tomaselli*, 25 Cal. App. 4th at 1285; *see also Riddle v. Leuschner*, 51 Cal. 2d 574, 580 (1959).

24  [34]  *See Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d at 836-37.

25  [35]  *See Tomaselli*, 25 Cal. App. 4th at 1285.

26  [36]  *See* Docket No. 1, Ex. B ¶ 15.

27  [37]  *Id.*

28  [38]  *See* Docket No. 1, Ex. B ¶¶ 13-14.

6

Case No.: 13-00216 PSG
**ORDER**

The court therefore finds that the factual allegations in Moreland's FAC are not sufficient to give rise to alter ego liability, and so do not support personal liability against Lopez for Ad Optimizers' actions.

### b.  Violation of CEL

Lopez further argues that Section 17529.5 only applies to those who advertise their goods or services in spam and not to those who provide third-party advertising services.  He points to the language of Section 17529.5 which makes it "unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address," which includes falsified header information.[39]  While Section 17529.5 applies only to entities that "advertise in" emails, other sections of the CEL apply to those who "initiate or advertise in" emails.[40]  Relying on those other sections, Lopez argues that by not including "initiators," Section 17529.5 applies only to entities whose goods or services are advertised in spam email.  Moreland responds that Section 17529.5 applies to any advertiser, including an entity such as Ad Optimizers that distributes third-party advertisements and initiates emails with those advertisements.

Although the court already has determined that the complaint fails to include sufficient facts to support holding Lopez liable for Ad Optimizers' actions, the court nevertheless addresses this alternative argument in the interest of completeness.  Lopez's argument that the difference in statutory language means that Section 17529.5 applies only to companies whose products are advertised in spam email does not comply with California courts' interpretation of the law.  California courts instead have applied Section 17529.5 both to companies that advertise in spam messages and to those that create and send third-party spam advertisements.[41]  For example, in *Balsam v. Trancos, Inc.*, a company that developed and sent out third-party advertisements was

---

[39]  Cal. Bus. & Prof. Code § 17529.5.

[40]  *See* Cal. Bus. & Prof. Code §§ 17529.4, 17529.6.

[41]  *See Balsam v Trancos*, 203 Cal. App. 4th 1083, 1092 (2012); *Hypertouch Inc. v.ValueClick*, 192 Cal. App. 4th 805, 820 (2011).

Case No.: 13-00216 PSG
**ORDER**

United States District Court
For the Northern District of California

1    subject to Section 17529.5 liability despite not advertising its own services.[42]  In *Hypertouch, Inc.*

2    *v. ValueClick, Inc.*, the court noted that "[S]ection 17529.5 was intended to apply to entities that

3    advertise in deceptive commercial e-mails, not only the spammers who send them," which

4    implicitly recognizes that Section 17529.5 applies to those who create and send spam advertising

5    third-party offerings.[43]  And this court itself has held that "Section 17529.5 includes no

6    requirement that the [advertiser] must have been advertising its own products or services."[44]

7            In sum, Moreland pleads a sufficient claim against Ad Optimizers for violations of the CEL

8    based on allegations that it created and sent spam emails advertising third-party goods or services

9    with falsified header information.  He does not, however, allege in the FAC that Lopez himself

10   created or sent the emails, and as the court already has determined, he does not plead facts

11   sufficient to support a claim of alter ego liability.  Lopez's motion to dismiss the CEL claim against

12   him therefore is GRANTED with leave to amend.

13           **2.    Civil Conspiracy**

14           Moreland alleges that Lopez conspired with Ad Optimizers and Kerrigan to contract with

15   third parties to advertise using unlawful spam emails.[45]  Lopez argues that Moreland fails to plead

16   facts to support the elements of civil conspiracy and that the agent's immunity rule insulates him

17   from liability for actions taken on behalf of Ad Optimizers.[46]  According to Moreland, Lopez acted

18   on his own behalf because he and Ad Optimizers have unified interests and so to the extent Lopez

19   conspired with third parties, the agent's immunity rule does not shield him.

---

[42]  *See Balsam*, 203 Cal. App. 4th at 1089.

[43]  *See ValueClick,* 192 Cal. App. 4th at 821.  Although *ValueClick* implies that Section 17529.5 applies even to those who merely send third-party advertisements, that implication is dicta.  The court therefore does not apply Section 17529.5 to include mere senders of third-party spam in light of the the statute's differentiation between advertisers and initiators.

[44]  *Hypertouch, Inc. v. Azoogle.com, Inc.*, Case No. 08-4970, 2009 WL 734674, at *2 (N.D. Cal. Mar. 19, 2009).

[45]  *See* Docket No. 1, Ex. B ¶¶ 77-78.

[46]  *See* Docket No. 4 at 13-14.

8

Case No.: 13-00216 PSG
**ORDER**

**United States District Court**
For the Northern District of California

"To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts."[47]  The liability of a corporate director, officer or member, if any, "stems from their own tortious conduct, not from their status as directors or officers of the enterprise."[48]  Under the agent's immunity rule, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."[49]  Absent allegations that an agent or employee was acting for his or her own benefit, a claim for civil conspiracy between an agent or employees and the corporate principal fails as a matter of law.[50]

In his complaint, Moreland alleges that Ad Optimizers, Kerrigan and Lopez, "acting in agreement, concert and conspiracy with each other. [sic] jointly and severally. . . acted with a common purpose to contract with third parties to advertise web sites through the use of unlawful spam emails."[51]  Moreland pleads no facts to support that Lopez is responsible for executing the contracts.  The only facts pleaded in support of Lopez's personal liability are that Lopez is an owner and manager at Ad Optimizers.  But ownership alone does not confer liability absent knowledge of, or participation in, the alleged conspiracy.[52]

---

[47] *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (*citing Cellular Plus, Inc. v. Superior Court,* 14 Cal. App. 4th 1224, 1235 (1993)).

[48] *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379 (2000).

[49] *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 n.4 (1994) (citation and internal quotations omitted); *see also Reynolds v. Bement*, 36 Cal. 4th 1075, 1090 (2005); *Everest Investors 8 v. Whitehall Real Estate P'ship XI*, 100 Cal. App. 4th 1102, 1107 (2002).

[50] *See Bus. Integration Tech. v. Mulesoft Inc.*, Case No. 11-04782, 2011 WL 5914012, at *7-*9 (N.D. Cal. Nov. 28, 2011); *Everest*, 100 Cal. App. 4th at 1107 (2002).

[51] Docket No. 1, Ex. B ¶ 77.

[52] Because an agent cannot conspire with its principal when acting within the scope of the agency, it stands to reason that if a member/owner of a limited liability corporation is acting as an agent of the corporate principal, he or she could not conspire with the principal.  It is unclear to the court, however, whether the members/owners of a limited liability corporation enjoy the agent's immunity rule presumption that an employee's actions are within the scope of employment absent pleading of facts to the contrary.

Case No.: 13-00216 PSG
**ORDER**

1    Lopez's motion to dismiss the civil conspiracy claim is GRANTED with leave to amend.

2    **3.    Declaratory Relief**

3    Moreland's third cause of action for injunctive relief is framed as a remedy for his CEL and

4    conspiracy claims.[53]  Because injunctive relief is a remedy, not a cause of action, this claim fails in

5    the absence of a separate cognizable claim.[54]  Moreland may seek injunctive relief as a remedy if

6    he successfully amends the FAC to resolve the deficiencies noted above.

7                                    **IV.    CONCLUSION**

8    Moreland's complaint against Lopez is dismissed with leave to amend.  Any amended

9    complaint shall be filed within fourteen days of this order.

10

11   **IT IS SO ORDERED.**

12   Dated: _April 8, 2013_                    _____

13                                             PAUL S. GREWAL
                                               United States Magistrate Judge
14

15

16

17

18

19

20

21

22

23

24

25

---

26   [53] *Id.*

27   [54] *See, e.g., Meadows v. First Am. Tr. Servicing Solutions, LLC*, Case No. 11-5754, 2012 WL
     3945491, at *6 (N.D. Cal. Sep. 10, 2012).
28

10

Case No.: 13-00216 PSG
**ORDER**