UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GEORGE MORELAND,<br><br>       Plaintiff,<br>v.<br><br>AD OPTIMIZERS, LLC., *et al.*<br><br>       Defendants. | Case No.: 5:13-CV-00216-PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS**<br><br>**(Re: Docket No. 28)** |

In this case arising under California's Commercial Email Law ("CEL"), Defendant George Lopez ("Lopez") moves to dismiss Plaintiff George Moreland's ("Moreland") second amended complaint ("SAC"). As he did in moving to dismiss Moreland's first amended complaint, Lopez argues that he is not an "advertiser" subject to liability as that term is used in Cal. Bus. & Prof. Code § 17529.5 nor an alter ego of fellow Defendant Ad Optimizers, LLC ("Ad Optimizers"). Lopez further challenges the sufficiency of Moreland's allegations under Fed. R. Civ. P. 9(b). Because Lopez is right, but only in part, the court GRANTS his motion, but ONLY IN PART.

## I. BACKGROUND

The background of this dispute was presented in the court's previous order.[1] As before, the court draws the following facts from Moreland's operative complaint and from documents of

---

[1] *See* Docket No. 25.

1

CASE NO.: 13-216-PSG
ORDER

which the court previously has taken judicial notice.[2] Moreland alleges that beginning on February 14, 2011, he received more than 1,300 spam email messages at his private, confidential email address. He claims that the email headers contained false and misleading information, including sham subject lines, phony sender names, and fake IP addresses. The false information apparently enabled the messages to bypass Moreland's spam filter and induced him to open them. According to Moreland, the emails contained advertisements from a number of different advertisers, and when he tried to opt-out of receiving them, even more of the emails were sent.

When Moreland tried to uncover the identity of the sender, he discovered that the emails were sent through either a botnet or privately registered proxy services designed to obscure their source by falsifying IP address information. Moreland ultimately learned that the emails were being sent by Ad Optimizers, a digital advertising company owned by Lopez and Jason Kerrigan ("Kerrigan"). The emails featured third-party ads and no advertisements of Ad Optimizers' services. Moreland has no business affiliation with any of the advertising companies or with Ad Optimizers and claims never to have consented to receiving the advertisements. As a result of these emails, Moreland claims that he incurred costs to store the unwanted emails and spent time accessing, reviewing, and discarding them.

On February 15, 2012, Moreland filed suit in Santa Clara County Superior Court against numerous defendants but not Lopez, Kerrigan, or Ad Optimizers. On June 19, 2012, after all of the named defendants were dismissed, Moreland filed a First Amended Complaint ("FAC") in which he added Ad Optimizers, Kerrigan, Lopez, and Does 1-100, asserting causes of action for violating Cal. Bus. and Prof. Code § 17529.5 and for civil conspiracy and declaratory relief. Lopez was served with the complaint on December 13, 2012, and he removed the case to this court on January 14, 2012. After the court dismissed the FAC, with leave to amend, Moreland filed his SAC, prompting the motion now at issue.

---

[2] *See* Docket No. 26.

2

CASE NO.: 13-216-PSG
ORDER

## II. LEGAL STANDARDS

A complaint may be dismissed under Rule 12(b)(6) "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."[3] The court must generally accept as true all "well-pleaded factual allegations,"[4] and must construe the alleged facts in the light most favorable to the plaintiff.[5] But any factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face."[6] Thus, a complaint should only be dismissed where it "appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[7]

Leave to amend shall be freely given when justice so requires.[8] But a motion for leave to amend may be denied if it would be futile or legally insufficient.[9] A proposed amendment is futile if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.[10]

## III. DISCUSSION

As this is the second order dealing with the sufficiency of Moreland's complaint, the court will cut to the chase. Beginning with Lopez's challenge on Rule 9(b) grounds, Lopez is right. Plaintiffs asserting claims "grounded in fraud" such as the claim here for violation of the CEL must

---

[3] *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

[4] *Ashcroft v. Iqbal*, 566 U.S. 662, 664 (2009).

[5] *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

[7] *Clegg v. Cult of Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

[8] Fed R. Civ. P. 15(a).

[9] *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

[10] *See id.*

3
CASE NO.: 13-216-PSG
ORDER

plead their claims with particularity.[11] They "must…provide more than general allegations regarding the false advertisements and examples."[12] "[I]t is the specific description of…'the who, what, when, where, and how,' that will be most important in allowing a defendant to prepare its answer."[13] "To satisfy the particularity requirement, the complaint must provide, at a minimum, the specifics regarding (including an example of) each type of allegedly false or misleading advertisement, the number of those advertisements and the date ranges of the emails in each category."[14]

Here, Moreland has failed to provide the "specifics regarding (including an example of) each type of allegedly false or misleading advertisement, the number of those advertisements [or] the date ranges of the emails in each category."[15] He did not provide a single example email, does not identify how many of the 1,300 emails fall into each of his seven categories of "prohibited tactics," and fails to identify the date ranges of the emails in each category.[16] Nor has he alleged the domain names for the landing sites to which any of the emails at issue redirect, who those sites were registered to, any of the allegedly unlawful subject lines, the sender of any of the emails, or the dates on which each email was sent.

Although on Rule 9(b) grounds alone, the court could dismiss Moreland's claims, in the interest of completeness, it addresses Lopez's other arguments. Lopez argues that Moreland's

---

[11] *See, e.g., Asis Internet Servs. v. Subscriberbase Inc.*, Case No. 09-3503 SC, 2009 U.S. Dist. LEXIS 112852, at *9-13 (N.D. Cal. Dec. 4, 2009); *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 945 (N.D. Cal. 2009); *Hypertouch, Inc. v. Azoogle.com, Inc.*, Case No. C-08-4970 MMC, 2009 U.S. Dist. LEXIS 25999 at *3-4 (N.D. Cal. Mar. 19, 2009).

[12] *Consumerbargaingiveaways*, 622 F. Supp. 2d at 945.

[13] *Subscriberbase*, 2009 U.S. Dist. LEXIS 112852 at *10-*11.

[14] *Consumerbargaingiveaways*, 622 F. Supp. 2d at 945.

[15] *Id.*

[16] Docket No. 26 ¶¶ 1-88.

conspiracy claim against him runs afoul of California's Agent's Immunity Rule.  Lopez is right again.  In dismissing a similar claim in the FAC, the court explained that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."[17]  Absent allegations that agents or employees acted for their own benefit, a claim for civil conspiracy between agents or employees and the corporate principal fails as a matter of law.[18]

This time around, Moreland contends that Lopez conspired to violate the CEL not merely with Ad Optimizers, the entity that he allegedly manages and owns,[19] but with at least one unnamed third party.  Moreland's allegations fail to overcome the rule.  In *Wise v. Southern Pacific*, a plaintiff alleged that his former employer (a corporation), one of its employees, a third party association, and one of the third party's employees, all conspired to wrongfully discharge him.[20]  Notwithstanding the fact that the employees were alleged to have conspired with corporate parties who were not their respective principals, the California Court of Appeal held that the conspiracy claims against the two employees failed as a matter of law.[21]  The net result is that, absence allegations that agents acted for his personal benefit beyond the scope of his agency, a conspiracy claim such as Moreland's against an agent for conspiring with his or her principal and a third party is barred.

---

[17] *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 n.4 (1994) (citation and internal quotations omitted); *see also Reynolds v. Bement*, 36 Cal. 4th 1075, 1090 (2005); *Everest Investors 8 v. Whitehall Real Estate P'ship XI*, 100 Cal. App. 4th 1102, 1107 (2002).

[18] *See Bus. Integration Tech. v. Mulesoft Inc.*, Case No. 11-04782, 2011 WL 5914012, at *7-9 (N.D. Cal. Nov. 28, 2011); *Everest*, 100 Cal. App. 4th at 1107 (2002).

[19] As the manager of Ad Optimizers, Lopez is an agent of the company, hence there exists an agent-principal relationship. *See* Cal. Corp. Code § 17157(b)(2); *People v. Pac. Landmark, LLC*, 129 Cal. App. 4th 1203, 1212 (2005).

[20] *See* 223 Cal. App. 2d 50, 55 n.2, 57-58 (1963).

[21] *See id.* at 72-73.

5
CASE NO.: 13-216-PSG
ORDER

As for Lopez's final challenge, again in the interest of completeness, the court finds this to be largely a rehash of his previous argument that liability under the CEL does not apply to those who create and send third-party email advertisements. As the court previously explained, Lopez's argument that the difference between the "advertiser and initiator" language in Sections 17529.4 and 17529.6 and the solitary "advertiser" language in Section 17529.5 applies only to companies whose products are advertised in spam email does not comply with California courts' interpretation of the law.[22] Whatever the appeal of Lopez's arguments on how best to interpret this distinction, and the limitations of the procedural context in which California's state courts have spoken on the subject, this court must respect their interpretation of their own state's laws.[23]

## IV. CONCLUSION

Lopez's motion to dismiss is GRANTED. Because any further amendment would appear to be futile other than with respect to Moreland's CEL claim, other than with respect to the CEL claim, this dismissal is WITHOUT LEAVE TO AMEND. Any further amended complaint shall be filed no later than August 2, 2013.

**IT IS SO ORDERED**

Dated: July 18, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[22] See *Balsam v. Trancos*, Inc., 203 Cal. App. 4th 1083, 1111 (2012) (holding a company that developed and sent out third-party advertisements was subject to Section 17529.5 liability despite not advertising its own services); *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 820 (2011) (holding that "[S]ection 17529.5 was intended to apply to … the spammers who send them; *see also Hypertouch, Inc. v. Azoogle.com, Inc.*, Case No. 08-4970, 2009 WL 734674, at *2 (N.D. Cal. Mar. 19, 2009) ("Section 17529.5 includes no requirement that the [advertiser] must have been advertising its own products or services").

[23] Lopez argues that this court ought to look to *Asis Internet Services v. Optin Global, Inc.*, in which the court held that because the plaintiff had not alleged that the defendant advertised in the emails, no cause of action had been stated. *See* Case No. C 05-5124 CW, 2006 U.S. Dist. LEXIS 46309, at *22 (N.D. Cal. June 30, 2006). Lopez believes that unlike the perfunctory analysis of *Balsam* or the dicta of *Hypertouch*, *Asis Internet* provides the requisite analysis and apparently the right answer. *Asis Internet* involves an earlier federal district court interpreting California law, which is persuasive but not binding on this court. California courts' interpretation of their own law, on the other hand, is binding. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). The court, therefore, applies *Balsam* and *Hypertouch* rather than *Asis Internet*.